UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

XEROX CORPORATION,

                           Plaintiff,              11-CV-6397

               v.                              **DECISION AND ORDER**

GRAPHIC MANAGEMENT SERVICES INC.,
GRAPHIC MANAGEMENT SERVICES, INC.,
MHW, INC., AND DAVID TABAH

                           Defendants,
_____

<u>**INTRODUCTION**</u>

     Plaintiff, Xerox Corporation ("Xerox" or "Plaintiff"), brings

this action for damages relating to Defendants' alleged breach of

two lease agreements (the "March and April 2010 Lease Agreements")

and a purchase agreement (the "Purchase Agreement") for printing

equipment, supplies and services (collectively, the "Agreements").

(Docket No. 5.)   Defendants, MHW, Inc.[1] ("MHW") and David Tabah

("Tabah") (collectively, "Defendants")  answered the complaint and

asserted nine counterclaims for breach of contract, fraudulent

inducement, revocation, rescission, negligent misrepresentation,

breach of the duty of good faith and fair dealing, breach of an

_____

     [1]In their Amended Answer, Defendants assert that MHW, Inc. is doing business as
"Graphic Management Services" and that Plaintiff incorrectly sued Graphic Management
Services Inc. and Graphic Management Services, Inc.  Xerox states in its memorandum of law
that these entities were named because of ambiguities as to who entered into the agreements at
issue. (Xerox Mem. of Law at 5, Docket No. 40-3.)  In the instant motion, Xerox seeks summary
judgment against MHW, Inc. only. The Court assumes that during discovery the parties will
resolve any ambiguity relating to whether the defendants Graphic Management Services, Inc. and
Graphic Management Services Inc. are properly defendants in this case.

express warranty, breach of the implied warranty of fitness for a particular purpose and breach of the implied warranty of merchantability. (Docket No. 35.)

Xerox now moves for summary judgment on its claims against MHW, Inc., to dismiss all of the Defendants' counterclaims except their breach of contract claim, and for an order limiting damages pursuant to the limitation of damages provisions in the Agreements. (Docket No. 40.) Defendants oppose the motion and cross move for summary judgment on Xerox's claims against Tabah. (Docket No. 43.) Defendants also request a change of venue to the Central District of California. For the reasons discussed herein, the Court grants in part and denies in part Plaintiff's motion for summary judgment and grants in part and denies in part Plaintiff's motion to dismiss Defendants' counterclaims, and denies Defendants' cross-motion for summary judgment and their motion to change venue. The parties may proceed to discovery on the amount of damages, on Defendants' counterclaim for breach of contract, Defendants' counterclaim for revocation of acceptance and on Plaintiff's claims against Tabah.

## **BACKGROUND**

### Local Rule 56

Local Rule 56(a)(2) requires a party opposing a summary judgment motion to respond to each fact as to which the moving party contends there is no genuine issue, and "if necessary, additional paragraphs containing a short and concise statement of

additional material facts as to which it is contended there exists a genuine issue to be tried." The material facts in the moving party's statement "will be deemed admitted for purposes of the motion unless [they are] specifically controverted" by the opposing party. Here, Defendants submitted a counter statement of material facts, however, the responses are, for the most part, conclusory statements regarding the enforceability of the contract based on their alleged counterclaims for, *inter alia*, fraud and breach of contract. (Def. Counter Statement of Material Facts, Docket No. 43-5.) While, pursuant to Rule 56 of the Federal Rules of Civil procedure, the court must draw all factual inferences in favor of the party against whom summary judgment is sought and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmovant, a nonmovant benefits from such factual inferences "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007). The law is well established that "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.1996).

Therefore, because the Defendants have failed to sufficiently controvert the facts contained in the Plaintiff's statement of material facts, those facts are deemed admitted for the purposes of Plaintiff's motion for summary judgment. Although Defendants have

requested that the motion be postponed so that the parties may conduct discovery pursuant to Rule 56 (d) of the Federal Rules of Civil Procedure, the Court's decision rests largely on the legal effect of the unambiguous terms of the Agreements, of which both parties are in possession. Accordingly, for the issues decided in this Decision and Order, discovery is not necessary. However, as discussed herein, the parties will have the opportunity to conduct discovery on several claims that remain pending as well as on the amount of Plaintiff's damages.

The Agreements

In March 2010, the parties entered into a lease agreement for the lease of an iGen4PFC printing press and related equipment. The March 2010 Lease Agreement lists the customer as "Graphic Management Services Inc." and the lease was signed by Tabah. The parties also entered into a lease agreement in April 2010 and a purchase agreement in January 2011 for additional printing equipment. Although not listed as the customer on any of the documents, the parties agree that MHW was a party to the Agreements.

The March and April 2010 Lease Agreements contain the following language: "Your obligation to make all payments, and to pay any other amounts due or to become due, is absolute and unconditional and not subject to delay, reduction, set-off, defense, counterclaim or recoupment for any reason whatsoever,

irrespective of Xerox's performance of its obligations hereunder."
The March and April 2010 Lease Agreements also state that each
lease "constitutes the entire agreement as to its subject matter"
and "supercedes all prior oral and written agreements." Under the
Agreements, Defendants also agreed that "Xerox disclaims the
implied warranties of non-infringement and fitness for a particular
purpose." Further, the March and April 2010 Lease agreements each
state: "[t]his Agreement is a 'finance lease' under Article 2A of
the Uniform Commercial Code."

The Agreements contain "Default & Remedies" provisions whereby
Defendants agreed to pay liquidated damages in the event of a
default. The Agreements also provide that if the equipment fails
to perform as provided in the contracts, Defendants could request
that the equipment be repaired or replaced. Lastly, in a limitation
of liability clause, in the event of a default on Plaintiff's part,
Defendants are limited to seeking direct damages in the amount of
$10,000, and they are prohibited from seeking "special, indirect,
incidental, consequential or punitive damages."

The leased and purchased equipment was installed, but since
early 2011, Defendants have failed to make payments under the
Agreements. There is no dispute that Defendants defaulted under
the Agreements.

In their counter complaint, Defendants claim that during the
negotiations of the Agreements, Plaintiff made certain statements

that induced them into entering the agreements and that the equipment did not perform as promised. Defendants raise several defenses and counterclaims relating to these alleged statements. Defendants further allege that they notified Plaintiff of the alleged deficiencies in the product and they were "forced to ... lease additional equipment" to conduct their business. However, they allege that Plaintiff did not remove the leased equipment until August 2011.

## DISCUSSION

### I. Venue

Defendants request a change of venue to the Central District of California. 28 U.S.C. Section 1404 provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." A district court may consider, *inter alia*, the following factors when determining whether to grant a motion to transfer venue: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." New York Marine and General Ins. Co. v. Lafarge North

America, 599 F.3d 102, 112 (2d Cir. 2010)(quoting D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-7)). Plaintiff's choice of forum is generally entitled to substantial deference. See Gross v. British Broadcasting Corp.,386 F.3d 224, 230 (2d Cir.2004). The party moving for transfer must show by clear and convincing evidence that the factors favor the transfer. N.Y. Marine, 599 F.3d at 113-114. Further, where the parties have contractually agreed to litigate a dispute in a particular forum, the party seeking to litigate in a different forum must "demonstrate exceptional facts why the forum-selection clause should not be enforced." Beatie and Osborn, LLP v. Patriot Scientific Corp., 431 F.Supp.2d 367, 397 (S.D.N.Y.2006).

Here, the Agreements contain a forum-selection clause naming the federal and state courts in Monroe County, New York as the forum of choice. (Pl. Exhibits A and E at ¶ 31, and H at ¶ 24.) Xerox chose to bring this lawsuit in the Western District of New York pursuant to the Agreements and because it is a New York corporation doing business in Monroe County. More than a year after the filing of the instant lawsuit, Defendants seek to transfer this case to the Central District of California contending that the witnesses reside is California and that California is the locus of operative facts. Further, they contend that MHW is a small business and litigating this case in the Western District of New York would be burdensome.

Considering all of the relevant factors and giving substantial deference to Plaintiff's choice of forum and the forum-selection clause, this Court finds that Defendants have not shown by clear and convincing evidence that venue is more appropriate in the Central District of California or that the forum-selection clause should be disturbed.  Therefore, Defendants' motion for a change in venue is denied.

## II. Claims against Tabah

Defendants seek summary judgment on Plaintiff's claims against Tabah contending that Tabah was not a party to the Agreements and that the Agreements do not contain a personal guarantee by Tabah. (Def. Mem. of Law at 3.) Tabah asserts that he signed the documents in his capacity as President of MHW. (Tabah Dec. at ¶¶ 5-6.) Xerox contends that material issues of fact preclude Tabah's motion for summary judgment as "it [is] unclear on whose behalf he executed" the Agreements as the customer is listed as Graphic Management Services, Inc. on the Purchase Agreement and the March 2010 Lease Agreement and Tabah states, "If there is a Graphic Management Services, Inc., it is not an organization with which I am familiar, and it is not affiliated with MHW, Inc. or me." (Pl. Mem. of Law at 11; Tabah Dec. at ¶ 1.)  It appears that the Agreements may contain typographical errors - listing Graphic Management Services, Inc. as the customer, where the customer was actually MHW, which does business as "Graphic Management Services."  See supra note 1.

However, at this stage in the litigation, it is not for the Court to resolve this dispute.

Xerox also contends that Tabah may be individually liable under the Agreements. At this stage in the litigation, prior to any discovery, the Court finds that Tabah has not adequately established that he is entitled to judgment as a matter of law on the claims against him as an individual. Neither party has articulated its position as to Tabah's potential liability as an individual on the Agreements, and the record has not been fully developed with respect to this issue. Accordingly, the Court denies Tabah's motion for summary judgment without prejudice to renew following discovery.

### III. Xerox's Motion for Summary Judgement against MHW for Breach of the Agreements

Xerox moves for summary judgment on its claims against MHW for breach of the Agreements. A party is entitled to summary judgment if it can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(a). Where a contract is "unambiguous" summary judgment is appropriate. See MBIA Inc. v. Federal Ins. Co., 652 F.3d 152, 171 (2d Cir. 2011). "Contracts are construed to give the intention of the parties effect, so an unambiguous contract 'must be enforced according to the plain meaning of its terms.'" Id (quoting Continental Ins. Co. v. Atlantic Cas. Ins. Co., 603 F.3d

169, 180 (2d Cir. 2010)). Whether the contract is ambiguous is a question of law. Cont'l Ins. Co., 603 F.3d at 180.

Here, Xerox contends that the Agreements are unambiguous and, based on the contents of the Agreements and the undisputed fact that MHW defaulted under the Agreements, it is entitled to summary judgment against MHW. Defendants do not contend that the Agreements are ambiguous or that they did not default; rather, they argue, *inter alia*, that they were fraudulently induced into signing the Lease Agreements, that the Lease Agreements are unenforceable for various reasons, and that Xerox also breached the Lease Agreements. They also request discovery on their various affirmative defenses and counterclaims.

For the reasons discussed herein, the Court grants in part and denies in part Plaintiff's motion for summary judgment. Plaintiff's motion is granted as to MHW's liability under the Agreements, but denied with respect to the amount of damages. Plaintiff's motion to dismiss Defendants' counterclaims, other than their claims for breach of contract and revocation of acceptance, is granted. Plaintiff's motion to limit Defendants' potential damages on their breach of contract claim is also granted.

A. The "Hell or High Water" Clause

The March 2010 and April 2010 Lease Agreements contain the following language: "Your obligation to make all payments, and to pay any other amounts due or to become due, is absolute and

unconditional and not subject to delay, reduction, set-off, defense, counterclaim or recoupment for any reason whatsoever, irrespective of Xerox's performance of its obligations hereunder." (Pl. Exhibits A and E at ¶21.) This clause, known as a "hell or high water clause" is unambiguous and, under New York Law, is generally enforceable. See Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S.A., 247 F.Supp.2d 352, 360-361 (S.D.N.Y. 2002)(citing cases). MHW does not contend that this language is ambiguous or that, in general, it is an enforceable provision in a contract. Further, MHW does not dispute that it failed to make all payments under the March and April 2010 Lease Agreements. Accordingly, based on these undisputed facts and the clear and unambiguous language of the March and April 2010 Lease Agreements, Xerox is entitled to summary judgment on its claims for non-payment, regardless of any claim by MHW that Xerox breached the March and April 2010 Lease Agreements. See id.

The Court also notes that in the March and April 2010 Lease Agreements the parties agreed that the leases were finance leases under Article 2A of the New York Uniform Commercial Code (" New York UCC"). (Pl. Exhibits A and E at ¶27.) While a transaction may not qualify as a finance lease under the New York UCC definition of a finance lease, the parties may agree that a lease be treated as a finance lease, as the parties have here. See N.Y. U.C.C. § 2-A-103(g) Off. Cmt. ("If a transaction does not qualify as a finance

lease, the parties may achieve the same result by agreement; no negative implications are to be drawn if the transaction does not qualify."); see also CN Funding, LC v. Ensig Group, Ltd., 52 A.D.3d 273 (1st Dep't 2008). Here, the parties clearly and unambiguously agreed to treat the March and April 2010 leases as finance leases. Under the New York UCC, a finance lease "is not subject to cancellation, termination, modification, repudiation, excuse, or substitution without the consent of the party to whom the promise runs." N.Y. U.C.C. §2-A-407(b); N.Y. U.C.C. §2-A-407(b) Off. Cmt. 2 ("The section requires the lessee to perform even if the lessor's performance after the lessee's acceptance is not in accordance with the lease contract.").

Accordingly, whether the Court looks to the "hell or high water clause" or the fact that the parties agreed that the March and April 2010 Lease Agreements were finance leases, MHW was obligated to make all payments under the March and April 2010 Lease Agreements regardless of Xerox's alleged breach. Therefore, Xerox is entitled to summary judgement on its claim of non-payment under the leases against MHW.

B. Defendants' Claims of Fraudulent Inducement and Negligent Misrepresentation

MHW argues that its allegations of fraudulent inducement and negligent misrepresentation are sufficient to defeat Xerox's motion for summary judgment on the March and April 2010 Lease Agreements and that Xerox's motion for summary judgment is premature as

Defendants have not had the opportunity to conduct discovery on these claims. (Def. Mem. of Law at 3-5.)

In addition to the fact that Defendants specifically agreed that their obligation to perform under the leases was "absolute and unconditional and not subject to delay, reduction, set-off, defense, counterclaim or recoupment for any reason whatsoever, irrespective of Xerox's performance of its obligations hereunder[,]" the March 2010 and April 2010 Lease Agreements also provide that each lease "constitutes the entire agreement as to its subject matter" and "supercedes all prior oral and written agreements." (Pl. Exhibits A and E at ¶31.) Based on this language, the Court finds that MHW is foreclosed from asserting a claim for fraudulent inducement or negligent misrepresentation and that discovery is not necessary on these claims, because the Court need only look to the plain language of the leases to decide this issue. See Marine Midland Bank, N.A. v. CES/Compu-Tech, Inc., 147 A.D.2d 396, 397-98 (1st Dep't 1989)(granting summary judgment on claim of fraudulent inducement based on the following language: "this Agreement set[s] forth the entire understanding of the parties hereto with respect to the subject matter thereof and may be modified only by a written instrument" and the signatory "waives ... the right to assert defenses, setoffs and counterclaims ... in any action or proceeding in any court arising on, out of, under, by virtue of, or in any way relating to this Note or the transactions

contemplated hereby"); see also Frankel v. ICD Holdings S.A., 930
F.Supp.54, 61-63 (S.D.N.Y. 1996); cf. Manufacturers Hanover Trust
Company v. Yanakas, 7 F.3d 310, 317 (2d Cir. 1993)(holding that a
"generalized boilerplate" merger clause was insufficient to waive
a claim for fraudulent inducement because the contract "contains no
disclaimer as to the validity, regularity, or enforceability of the
[contract] itself.").

    While a fraudulent inducement claim would not be foreclosed
by a boilerplate merger clause, the language in the March and April
2010 Lease Agreements is sufficiently specific as to MHW's waiver
of defenses and counterclaims and the prohibition of relying on
prior statements, to preclude MHW from reasonably relying on
representations made prior to the execution of the March and April
2010 Lease Agreements as the basis for any counterclaim. See
Marine Midland Bank, 147 A.D.2d at 397-98. Accordingly,
Defendants' counterclaims for fraudulent inducement and negligent
misrepresentation are dismissed.

    C. The Purchase Agreement

    Xerox also seeks summary judgment on its claim that MHW
defaulted under the Purchase Agreement. MHW has not raised any
material issues of fact with respect to the Purchase Agreement and
it has not addressed the Purchase Agreement in its opposition to
the instant motion. Further, Defendants' counterclaims relate only
to the March and April 2010 Lease Agreements. Accordingly, as MHW

has failed to address Xerox's contention that it is entitled to summary judgment on this claim and it has not raised any material issues of fact relating to its default on the Purchase Agreement, the Court grants Xerox's motion for summary judgment on its claim that MHW defaulted under the Purchase Agreement.

**IV. Damages**

Xerox also seeks summary judgment on the issue of damages relating to MHW's default under the Agreements and it seeks to dismiss that portion of Defendants' breach of contract claim which seeks damages that are not specifically authorized by the limitation of liability provisions in the Agreements. Defendants oppose the motion, contending that there are material issues of fact relating to several of their defenses regarding damages and as to Xerox's calculation of damages.

A. Limitation of Liability

The Agreements each contain a limitation of liability clause which limits Defendants' recovery for any breach of the Agreements to $10,000 or the amounts paid under the Agreements, whichever is greater, and also precludes recovery of any "special, indirect, incidental, consequential or punitive damages." (Pl. Exhibits A and E at ¶23, and H at ¶17.) The Agreements also provide that the leased or purchased equipment could be repaired or replaced if it did not meet performance expectations. (PL. Exhibits A, E and H at ¶1.)

Defendants argue that the imitation of liability clause "fails of its essential purpose," and should not be enforced. Parties to a contract may limit the available remedies and, generally, limitation of liability clauses are enforced "unless the specified remedy 'fails of its essential purpose.'" <u>Maltz v. Union Carbide Chems. & Plastics Co., Inc.</u>, 992 F.Supp. 286, 304 (S.D.N.Y. 1998) (citing N.Y.U.C.C. § 2-719(2); <u>Scott v. Palermo</u>, 233 A.D.2d 869, 649 N.Y.S.2d 289, 290 (4th Dep't 1996); <u>Rubin v. Telemet America, Inc.</u>, 698 F.Supp. 447, 449-50 (S.D.N.Y.1988); <u>Matco Elec. Co. v. American Dist. Telegraph Co.</u>, 156 A.D.2d 840, 843, (3d Dep't 1989)). "A remedy fails of its essential purpose if "the circumstances existing at the time of the agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with <u>no remedy at all</u>." <u>Id</u> (emphasis added). Generally, this is a question of fact for the jury, however, Courts have found that where the contract provides for either the option of replacement of the goods or the contract price, and where the non-breaching party has not alleged that the limited remedy provision would "effectively deprive them of a remedy," the limitation of liability clause does not fail of its essential purpose. <u>Id</u>.

Here, Defendants allege that the limited remedy fails of its essential purpose because they "lost the substantial benefit of [the] lease of the iGen4 and purchase of ancillary equipment." However, Defendants do not plausibly allege that they were deprived

of any remedy at all, merely that the equipment failed to meet their expectations. Accordingly, the Court finds that they have not alleged that the limited remedy "fails of its essential purpose," because they could have requested replacement equipment or sued Xerox, as they have here, for either the payments it made under the Agreements or $10,000, whichever is greater. See id. Under these circumstances, the Court finds that limitation of liability clause is enforceable.

"Where a contract contains both an exclusive remedy provision and a provision limiting consequential damages, the provision limiting consequential damages will be enforced so long as it is found not to be unconscionable[.]" Palermo, 233 A.D.2d at 290. Whether a contract provision is unconscionable is a question of law for the court. Id. at 291. "[T]here is a presumption of conscionability when the contract is between businessmen in a commercial setting." American Dredging Co. v. Plaza Petroleum Inc., 799 F.Supp. 1335, 1339 (E.D.N.Y. 1992); see N.Y.U.C.C. § 2-719(3). Defendants do not present any facts from which this Court could conclude that the limitation of consequential damages clause is unconscionable, and it is undisputed that the Agreements are commercial in nature and that the parties are sophisticated businesses or businessmen. Accordingly, the Court finds that Defendants may not recover consequential damages for any breach of

the Agreements by Xerox and its claims for consequential damages are dismissed.

### B. Mitigation of Damages

Defendants also argue that Xerox's damages should be limited because it failed to mitigate its damages. However, as Xerox correctly points out, where a contract contains a valid liquidated damages provision, "mitigation of damages is not relevant." Delvecchio v. Bayside Chrysler Plymouth Jeep Eagle, Inc., 271 A.D. 2d 636, 639 (2nd Dep't, 2000). Here, the March and April 2010 Lease Agreements contain liquidated damages provisions permitting Xerox to recover, upon default, "all amounts then due, plus interest; the minimum monthly payments remaining through the term of the applicable lease agreement, subject to setoff" after notice of default, and the amount due pursuant to the applicable leases' purchase option and taxes, costs and attorneys' fees. (Pl. Mem. of Law at 3; Pl. Exhibits A and E ¶20.) The Purchase agreement contains a similar liquidated damages provision. Defendants have not alleged that the liquidated damages provisions are ambiguous, unreasonable or invalid for any reason, or that there are material issues of fact that preclude a determination of the enforceability of this provision; and this Court finds that they are enforceable as a matter of law. See Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S.A., 315 F.Supp.2d 347, 349-352 (S.D.N.Y. 2003)(finding a liquidated damages provision was enforceable as

"reasonable in light of the then anticipated harm caused by the default" under Article 2 of the New York Uniform Commercial Code because it permitted liquidated damages after a demand and required a set off for the fair market rental value.) Accordingly, the Court finds that Xerox was not required to mitigate its damages, and Defendants' claim to the contrary is dismissed.

### C. Calculation of Damages

Defendants also contend that Xerox has not adequately explained its calculation of the fair market value of the leased equipment and therefore there are material issues of fact with respect to the amount of damages. This Court agrees. While Xerox has submitted invoices for the equipment and the affidavit of an employee at Xerox who attests to the fair market value of the leased equipment, Xerox has not explained how this figure was calculated. Accordingly, Defendants are permitted to conduct discovery on this issue to determine the proper amount of damages.

### V. Defendants' Other Counterclaims

### A. Rescission and Breach of Express Warranty

Defendants' counterclaims for rescission and breach of an express warranty rest on its allegations that it was fraudulently induced into the Agreements and that the Agreements fail of their essential purpose. As the Court has already determined that Defendants are foreclosed from claiming fraudulent inducement based on the plain meaning of the Agreements and that the Agreements do

not fail of their essential purpose, Defendants' counterclaims for rescission and breach of express warranty are dismissed.

### B. Breach of the Implied Duty of Good Faith and Fair Dealing

Xerox contends that Defendants' allegations of a breach of the implied duty of good faith and fair dealing should be dismissed as duplicative of their breach of contract claim. Defendants have not responded to this argument, and the Court finds that this counterclaim is duplicative of Defendants' breach of contract claim. See Hall v. Earthlink Network, Inc., 396 F.3d 500, 508 (2nd Cir.2005). Accordingly, this counterclaim is dismissed.

### C. Revocation

Defendants' counterclaim for revocation of acceptance relates to the March 2010 Lease of the iGen4PFC printing press. Under New York U.C.C. § 2-A-517, "Revocation of acceptance must occur within a reasonable time after the lessee discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by the nonconformity. Revocation is not effective until the lessee notifies the lessor." Defendants allege that they received the iGen4PFC printing press in March 2010 and soon thereafter they notified Plaintiff of the deficiencies in the product, thereby revoking their acceptance of the product.

Xerox contends that because MHW alleges that it received the iGen4PFC printing press in March 2010 and "continued using it"

until Xerox removed it in August 2011, it has not plausibly alleged a claim for revocation of acceptance. They further contend that Defendants have failed to allege that they notified Xerox in writing, withing a reasonable amount of time, as is required by the contract. However, the counter complaint does not allege that the Defendants continued to use the iGen4PFC printing press, rather, they allege that they leased other equipment to continue their printing operations.

Based on the allegations in the counter complaint, viewed in the light most favorable to the Defendants, the Court finds that Defendants have plausibly alleged revocation of acceptance. While Defendants have not alleged the exact timing of the alleged revocation, nor have they alleged that they notified Xerox in writing or that they actually discontinued used of the iGen4PFC printing press within a reasonable amount of time, "heightened fact pleading of specifics [is not required], but only enough facts to state a claim to relief that is plausible on its face." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The cases cited by the Defendants were all decided after discovery. At this stage, the Court finds that Defendants may proceed to discovery on their claim for a revocation of acceptance. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." A court's belief or disbelief in

a complaint's factual allegations or its belief that a "recovery is very remote and unlikely" does not factor into a decision under Rule 12(b)(6).).

## D. Breach of Implied Warranty of Fitness for a Particular Purpose

Defendants' counterclaim alleging a breach of the implied warranty of fitness for a particular purpose also relates to the March 2010 Lease of the iGen4PFC printing press. (Docket No. 35.) The March 2010 Lease specifically states, "Xerox disclaims the implied warranties of non-infringement and fitness for a particular purpose." (Pl. Exhibit A ¶27.) Defendants do not specifically address this claim in their response to Plaintiff's motion, and the Court finds that the Defendants cannot now claim that Xerox breached the implied warranty of fitness for a particular purpose where it was specifically disclaimed in the contract. See Rochester-Genesee Regional Trans. Authority v. Cummins Inc., 2010 WL 2998768, at *5 (W.D.N.Y. July 28, 2010)(citing Dallas Aero., Inc. v. CIS Air Corp., 352 F.3d 775, 785 (2d Cir.2003) and (Grumman Allied Indus. v. Rohr Indus., 748 F.2d 729, 735 (2d Cir.1984)).

## E. The Implied Warranty of Merchantability

Defendants Ninth Counterclaim alleges, without further factual support, that the iGen4PFC printing press "was not fit for its ordinary purpose and was unable to reliably support MHW's printing business." They allege that the iGen4PFC printing press "failed to

operate according to the representations and specifications provided." The Court finds that Defendants have failed to plausibly allege a claim for a breach of the implied warranty of merchantability. "[A]t a bare minimum, the operative standard [on a motion to dismiss] requires [a party] [to] provide the grounds upon which his claim rests through factual allegations sufficient to 'raise a right to relief above the speculative level.'" See Goldstein v. Pataki, 516 F.3d 50, 56-57 (2d Cir.2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "To establish that a product is defective for purposes of a breach of implied warranty of merchantability claim, a plaintiff must show that the product was not reasonably fit for its intended purpose, an inquiry that focuses on the expectations for the performance of the product when used in the customary, usual[,] and reasonably foreseeable manners." Here, Defendants merely recite the elements of the cause of action for breach of the implied warranty of merchantability without providing any facts which could plausibly support the claim. For example, Defendants' counter complaint does not allege what were the actual expectations for performance of the iGen4PFC printing press under ordinary circumstances or how their use of the product fell within the range of its intended purpose.

Further, the New York UCC excludes finances leases from leases which contain an implied warranty of merchantability. N.Y. U.C.C. § 2-A-212(1). Because the parties agreed to treat this lease as a finance lease, no implied warranty of merchantability exists. Accordingly, the Court finds that Defendants may not proceed with their claim for a breach of the implied warranty of merchantability and this counterclaim is dismissed.

## **CONCLUSION**

For the reasons discussed herein, the Court grants in part and denies in part Xerox's motions for summary judgment and to dismiss Defendants' counterclaims. The Court denies Defendants' cross-motion for summary judgment on the claims against Tabah and denies their motion for a change in venue. The parties may proceed to discovery on the issue of damages, the claims against Tabah and Defendants' counterclaims for breach of contract and revocation of acceptance.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        S/ MICHAEL A. TELESCA
                                        HON. MICHAEL A. TELESCA
                                        United States District Judge

Dated:      Rochester, New York
            July 17, 2013